# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### 3:07CV422-02-MU

| | | |
|---|---|---|
| ANTHONY WILLIAMS,<br>    Petitioner, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| THEODIS BECK, Secretary of the<br>  North Carolina Department of<br>  Corrections,<br>    Respondent. | ) | |

**THIS MATTER** is before this Court upon Petitioner's Petition
under 28 U.S.C. § 2254 for a Writ of <u>Habeas Corpus</u>, filed October
5, 2007 (document # 1); on Respondent's Motion for Summary Judg-
ment, filed November 19, 2007 (document # 4); on Petitioner's
Objection to Respondent's Answer and Motion to Dismiss, filed
December 19, 2007 (document # 10); and on Petitioner's Motion to
Obtain Ruling, filed March 11, 2009 (document # 11).

## I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Pertinent records from Petitioner's file and the published
decision from the North Carolina Court of Appeals reflect that:

> Jeffery Falls assisted the police in an undercover
> narcotics operation on 9 September 2002.
> Specifically, Falls who had purchased cocaine from
> defendant in the past, sought to purchase two
> kilograms of cocaine from defendant at a specified
> location where the police would observe.
>
> The operation was organized, in part, by
> Special Agent Rodney Blacknall of the Bureau

of Alcohol Tobacco and Firearms and Sergeant Rev Busker of the Charlotte-Mecklenburg Police Department. After telephone calls between Falls and the defendant, the two agreed to meet at a local YMCA. Falls was not wired for the meeting with defendant. Instead, to facilitate officers' monitoring of the events, Falls was instructed to leave his cell phone connection open when Blacknall telephoned him.

Falls drove to the YMCA, followed by Blacknall. Falls identified the defendant and his vehicle, a Cadillac Escalade. Falls exited his vehicle as the cell phone connection between Blacknall and Falls remained open. Falls first greeted the defendant on the stairs of the YMCA. Then, as per defendant's request, both men were seated in defendant's Escalade. After Falls told defendant that he needed to see the cocaine, the two men walked to the back of the vehicle. Defendant opened the back hatch and displayed cocaine that was stored in a black leather bag. Defendant gave two pornographic video tapes to Falls. Falls then signaled Blacknall over the cell phone and law enforcement officers arrested the defendant, and the two kilograms of cocaine were seized from the Escalade.

Shortly after the arrest, Blacknall and others executed a search warrant at two addresses associated with the defendant. Police found the following: documents in defendant's alias, Johnny Manning; documents revealing that Charmaine Thorton leased the Escalade; tax returns in defendant's true name, Anthony Williams; a couple of safes; and video equipment and tapes which suggested that defendant was operating a pornography business out of his apartment across the street from the YMCA.

Blacknall and Busker testified that they were unable to directly observe the transaction between Falls and defendant; Blacknall relied, instead, on the cell phone connection. However, an SBI agent observed Falls and the defendant exit the Escalade, walk to the rear of the vehicle, and open and

> close the back hatch.
>
> Defendant was convicted of trafficking in
> cocaine by possession and trafficking in
> cocaine by transportation, and was sentenced
> to two consecutive prison terms of 175-219
> months.

North Carolina v. Williams, 177 N.C. 725, 726-27 (June 6, 2006).
The record shows that on September 23, 2003, trial counsel filed
a written notice of appeal and requested the appointment of the
Appellate Defender for Petitioner; however, no appeal was
perfected at that time.

Rather, on March 25, 2004, Petitioner filed a Motion for
Appropriate Relief ("MAR," hereafter) in the Superior Court of
Mecklenburg County.  Such MAR requested an evidentiary hearing in
order to present evidence of trial counsel's instances of inef-
fectiveness, including his failure to honor Petitioner's request
for an appeal, and to present evidence of the trial judge's
alleged bias against him.  However, that MAR summarily was de-
nied by an Order filed April 23, 2004.

Next, on June 23, 2004, Petitioner filed a certiorari peti-
tion in the North Carolina Court of Appeals seeking, among other
matters, permission to take a direct appeal and to obtain an
evidentiary hearing on the claims raised in his MAR.  The State
asked the Court to grant that petition, but only so that Peti-
tioner could receive a hearing on his claims.  However, by an
Order filed August 4, 2004, the State Court of Appeals granted

that <u>certiorari</u> petition for the purpose of allowing Petitioner
to take a belated appeal and to have appellate counsel appointed.

Nevertheless, before that appeal could be fully perfected,
on November 18, 2004, Petitioner, acting <u>pro-se</u>, filed a Petition
for a Writ of <u>Supersedeas</u>, and on April 1, 2005, he filed another
<u>certiorari</u> petition, both of which summarily were dismissed in
separate orders by the State Court of Appeals.

Eventually Petitioner's appeal was filed, asserting that the
trial court had erred in denying his motion to dismiss the charge
of trafficking in cocaine by transportation, and in allowing the
State to introduce impermissible character evidence concerning
his involvement in the pornography business. <u>Williams</u>, 177 N.C.
at 728. However, the State Court of Appeals determined that,
even assuming the character evidence impermissibly was admitted,
such error was not fundamental, nor did it result in a miscar-
riage of justice or denial of a fair trial for Petitioner because
there was "substantial record evidence establishing [Petition-
er's] commission of trafficking in cocaine by possession." <u>Id</u>.
at 730.

On the other hand, the Court of Appeals determined that
because the State's evidence did <u>not</u> establish that Petitioner
substantially had moved the cocaine from one place to another,
his conviction for trafficking in cocaine by transportation had
to be vacated. <u>Id</u>. at 729. Consequently, Petitioner's convic-

tion for trafficking in cocaine by possession along with its corresponding sentence were affirmed. Id. at 732.

In addition, the Court of Appeals determined that the Superior Court's summary denial of Petitioner's 2004 MAR had to be vacated. Id. at 731-32. Specifically, the Court of Appeals determined that since trial counsel had filed the 2003 notice of appeal, the MAR Court was divested of its authority to entertain Petitioner's MAR. Id. at 731. Petitioner therefore was advised that he could return to the Superior Court with a new MAR at the conclusion of that appeal. Id. at 732.

Nevertheless, on June 12, 2006, Petitioner returned to the State Court of Appeals and filed a document captioned as a "Petition For Motion For Appropriate Relief Or Appelate [sic] Court's Motion Sua Sponte." Not surprisingly, the Court of Appeals summarily dismissed that MAR on June 22, 2006. Next, on July 11, 2006, Petitioner went to the State Supreme Court and filed an otherwise unspecified letter-motion seeking review of the State Court of Appeals' "unsigned . . . opinion documents." However, that petition was denied by an Order entered August 17, 2006.

On January 8, 2007, Petitioner finally returned to the Superior Court of Mecklenburg County and filed his MAR challenging the trial court's admission of evidence concerning his involvement in the pornography industry, its admission of Bernard Falls' testimony, its denial of his motion to strike Officer

Hetzel's testimony, its denial of his request for a specific jury
instruction, its admission of evidence allegedly secured by a
violation of his rights, and its denial of his motion to dismiss
at the close of the evidence. That MAR further alleged that
trial counsel was ineffective due to a conflict of interest and
deliberate indifference; and that counsel was ineffective for
failing to require him to attend his probable cause hearing, for
falsely stating during counsel's opening statement that Peti-
tioner was involved in making pornographic films, for "ease[ing]
up" when his cross-examination proved successful, for failing to
call Petitioner as a witness and, curiously, for failing to seek
a dismissal of the charges at the close of the evidence. Addi-
tionally, the MAR alleged that the trial judge was biased on the
basis of her acquaintanceship with Ms. Thornton; that he was
subjected to prosecutorial misconduct; and that he was subjected
to double jeopardy. However, on May 16, 2007, the trial Court
summarily denied Petitioner's MAR.

On June 28, 2007, Petitioner filed a <u>certiorari</u> petition in
the State Court of Appeals seeking review of the denial of his
most recent MAR. Such Petition was denied by Order of July 18,
2007. Thereafter, the State Supreme Court dismissed Petitioner's
Petition for Discretionary Review of the Court of Appeals'
decision on August 23, 2007, thereby concluding Petitioner's
pursuit of collateral review in State court.

Thus, on October 5, 2007, Petitioner came to this Court with this § 2254 Petition. By his first claim, Petitioner argues that he was subjected to various instances of ineffective assistance of trial counsel by virtue of his alleged failure "to do any pre-trial investigation[,]" to "file [a] motion to suppress illegal-[ly] obtained evidence[,]" to "file verbal notice of appeal[,]" and to "file [a] motion about State Witness informans [sic] credibility" (document # 1 at 5). In addition, however, Petitioner's Memorandum sets forth several other matters which, when liberally indulged, can be construed as alleging that counsel erroneously allowed someone to stand in for Petitioner at his probable cause hearing, he failed to seek a dismissal, as opposed to seeking a continuance, upon learning that the prosecutor was not ready to proceed on the scheduled first day of trial, he failed to argue that the trial judge had a conflict of interest because of her acquaintanceship with Ms. Thornton, he failed to object to the introduction of the audiotape of his trug deal, he failed to challenge the prosecutor's alleged failure to give proper notice of his intent to introduce the audiotape, he er-roneously referred to Petitioner's production of pornographic videos, and he failed to seek the dismissal of the charges for insufficiency of the evidence. (Id. at 20-22).

By his second claim, Petitioner alleges that he was sub-jected to prosecutorial misconduct in that the prosecutor

allegedly "used evidence in an illegal search and seizure"; he
"used evidence that was altered by the police or himself"; and he
"used separate identical indictments[,] subdividing a single
criminal charge to pursue successive prosecutions to enhance
Petitioner's sentence. (Id. at 6). Petitioner's Memorandum also
asserts that the prosecutor "suppressed favorable evidence from
Petitioner; he "used false testimony to secure a conviction,
[and] knowingly used perjured S.B.I. testimony, promises of
leniency made to snitch witness Bernard Falls for his testimony";
he "used false and misleading evidence to the grand jury to get
the indictments"; he "used dubious perjured testimony of offi-
cers"; and he "used evidence in his closing arguments to the jury
that was not entered into evidence at trial[.]" (Id. at 23).

By his third claim, Petitioner alleges that the trial judge
had a conflict of interest by virtue of her having been acquaint-
ed with Ms. Thornton. (Id. at 8). Last, Petitioner claims that
he was subjected to ineffective assistance of appellate counsel
by his "refus[al] to investigate [Petitioner's] claims . . . and
refus[al] to argue both of [Petitioner's] charges in [his]
appellate brief." (Id. at 10). Petitioner also argues that
appellate counsel "filed a brief that [did] not support [Peti-
tioner's] pro-se motions and [his] assessments of errors"; that
appellate counsel attached [Petitioner's] pro se petition for a
writ of certiorari to [his] appellate brief on appeal instead of

filing a[n] MAR in the appellate court as requested."  (Id.).

On November 19, 2007, Respondent filed a Response denying Petitioner's claims (document # 9),[1] along with a Motion for Summary Judgment arguing for a judgment as a matter of law (document # 4).  Thereafter, Petitioner filed a document purporting to respond to Respondent's Motion for Summary Judgment.

## II.  <u>ANALYSIS</u>

### A.  Standard of review

Generally speaking, the standard of review to be applied by the Court to <u>habeas</u> cases is "quite deferential to the rulings of the state court."  <u>Burch v. Corcoran</u>, 273 F.3d 577, 583 (4th Cir. 2001).  Indeed, as the <u>Burch</u> Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . ."

---

[1] Respondent mistakenly filed a Response to another § 2254 petition with the caption for this case (document # 3).  However, on December 19, 2007, Respondent corrected his error and filed a response to the instant case.

<u>Id</u>. (internal citations omitted).

The Supreme Court has explained that a State court adjudi-
cation is "contrary" to clearly established federal law, only if
"the state court arrives at a conclusion opposite to that reached
by [the Supreme] Court on a question of law or if the state court
decides a case differently than [the Supreme] Court has on a set
of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529
U.S. 362, 413 (2000) (<u>quoting</u> <u>Burch</u>). An unreasonable application
is different from an incorrect application of federal law, the
former being the requisite showing. Therefore, this Court may
<u>not</u> issue the writ even if it concludes in its own independent
review, that the relevant state court merely made an incorrect or
erroneous application of the correct federal principles. <u>Id</u>.

The applicable standard of review is to be applied to "all
claims 'adjudicated on the merits,' that is, those claims sub-
stantively reviewed and finally determined as evidenced by the
state court's issuance of a formal judgment or decree." <u>Thomas
v. Davis</u>, 192 F.23d 445, 455 (4th Cir. 1999). With these princi-
ples firmly in mind, this Court now directs its attention to the
petitioner's claims. Furthermore, the Court is aware that
summary judgment "should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c).

With these standards firmly in mind, the Court carefully has reviewed the parties' documents along with the underlying record and the relevant legal precedent, and has determined that there are no genuine issues of material fact to be resolved. Furthermore, the Court has determined that Petitioner has failed to forecast any evidence to show that he is entitled to relief on his claims. Therefore, Respondent's Motion for Summary Judgment will be <u>granted</u>, and this § 2254 Petition will be <u>denied</u> and <u>dismissed</u>. Additionally, Petitioner's Motions for a ruling will be <u>dismissed</u> as moot.

**B. Petitioner's claims do not entitle him to relief.**

**1. <u>Defaulted claims</u>.**

Petitioner alleges that trial counsel was ineffective for failing to conduct a pre-trial investigation of his case. Petitioner also alleges that appellate counsel was ineffective for having failed to investigate his claims; and that appellate counsel was ineffective for having failed to argue "both charges" in his appellate brief, for filing a brief which allegedly did not support Petitioner's pro-se motions certain matters, and for attaching a copy of Petitioner's pro-se <u>certiorari</u> petition to his appeal brief instead of filing an MAR in the appellate court as Petitioner had requested.

Respondent contends that the foregoing allegations are barred by Petitioner's procedural default of them. Specifically, Respondent argues that there is no mention in any of Petitioner's State proceedings of trial counsel's alleged failure to investigate. Further, Respondent asserts that Petitioner did not exhaust his claims against appellate counsel by invoking one full round of State court proceedings for those issues. According to Respondent, Petitioner merely raised a portion of those allegations in a letter-motion which he filed in the State Supreme Court seeking review of the State Court of Appeals' June 6, 2006 decision. Respondent further contends that raising a claim in that manner does not satisfy the exhaustion requirement and, more significantly, that such allegations must be deemed defaulted because Petitioner would not now be permitted to raise these claims even if he returned to State court in order to do so. <u>See</u> N.C.G.S. § 15A-1419(a)(1), <u>et. seq</u>. (instructing that claims be denied when defendant could have raised them on appeal or in a prior MAR but failed to do so with no valid reason). Therefore, Respondent argues that since these claims are unexhausted and defaulted Petitioner is not entitled to any review of them.

The Court's review of this record reflects that Respondent is correct in his contention that these claims are unexhausted and defaulted. Curiously, Petitioner argues that his first <u>certiorari</u> petition (by which he sought permission for his

belated appeal) raised his claims against trial counsel in that such petition claimed that his "Federal Rights were willfully violated, the 1st, 4th, 5th, 6th, 7th, and 14th amendments, furthermore, [All] evidence affidavits in Petitioner's M.A.R. and motion to amend M.A.R. are true and correct."  Thus, Petitioner "contends that this is the 'same' petition No. P04-617, that the State agreed that the Petitioner's allegations required an Evidentiary Hearing."  Suffice it to say, however, this explanation must fail inasmuch as the vague language to which Petitioner points does not even hint at a challenge to trial counsel's investigative efforts.  Nor can this conclusory language be deemed a challenge to appellate counsel's conduct when that attorney had neither entered the case nor performed any services at the time that the petition containing that language was filed.

Thus, in light of the procedural default of these matters and Respondent's assertion of that default as a defense, Petitioner cannot now obtain federal review of these claims unless he is able to establish "cause" for their default <u>and</u> "actual prejudice" as a result of the alleged violation of federal law, or if he can establish actual innocence in conjunction with the subject claims. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>and</u> <u>Fisher v. Angelone</u>, 163 F.3d 835, 844 (4th Cir. 1998).  This practice of federal courts rejecting procedurally defaulted claims ensures that <u>habeas</u> petitioners do not evade

state procedural rules governing the review of criminal convictions.  See Lambrix v. Singletary, 520 U.S. 518, 523 (1997).
Cause is established by showing that the factual or legal basis for a claim "was not reasonably available" at the time the first challenge was made.  McCarver v. Lee, 221 F.3d 583, 591 (4th Cir. 2000).  To establish corresponding prejudice, a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Id. at 592.

Petitioner's convoluted explanation falls far short of demonstrating that his default somehow should be excused.
Therefore, these claims are not cognizable in this proceeding.

### 2.  Cognizable claims against counsel

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby.
Strickland v. Washington, 466 U.S. 668, 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir.

1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Mary-</u>
<u>land</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011
(1978). Under these circumstances, a petitioner "bears the
burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at
1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If the petitioner
fails to meet this burden, a "reviewing court need not consider
the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u>
<u>Strickland</u>, 466 U.S. at 697.

Further, in considering the prejudice prong of the analysis,
the Court must not grant relief solely because the petitioner can
show that, but for counsel's performance, the outcome of the pro-
ceeding would have been different. <u>Sexton v. French</u>, 163 F.3d
874, 882 (4ᵗʰ Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999).
Rather, the Court "can only grant relief under. . . <u>Strickland</u> if
the 'result of the proceeding was fundamentally unfair or unre-
liable.'" <u>Id.</u>, <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369
(1993).

Petitioner claims that trial counsel was ineffective for
failing to seek the suppression of the drugs after reportedly
telling Petitioner that police had neither search nor arrest
warrants, and they had no probable cause to support their search
and seizure of the drugs. However, to the extent that defense
counsel actually said that to Petitioner, counsel simply was
mistaken. Indeed, as the facts gleaned from the State Court of

Appeals' decision clearly show, law enforcement officers were
nearby monitoring Petitioner's efforts to sell and deliver his
cocaine to their informant.  Therefore, Petitioner's commission
of a crime under those circumstances created an exception to the
Fourth Amendment's arrest warrant requirement.  See Illinois v.
Gates, 462 U.S. 213, 230-31 (1983) (permitting warrantless ar-
rests where there is probable cause to believe, based upon the
"totality of the circumstances," that a felony is being commit-
ted); accord United States v. Watson, 423 U.S. 411, 424 (1976)
(warrantless arrest permitted if officer has probable cause to
believe a felony has been committed, even if committed outside
officer's presence).  Likewise, searches incident to the arrest
-- of the person and areas or containers within his or her
immediate control -- also are a well established exception to the
Fourth Amendment's warrant requirements.  See, e.g., Michigan v.
DeFilippo, 443 U.S. 31, 35 (1979).  Consequently, counsel could
not have been ineffective for choosing not to raise this claim.

     Petitioner's claim that counsel was ineffective for failing
to give an oral notice of appeal, particularly when counsel ac-
tually gave written notice of appeal, must be rejected as patent-
ly frivolous.  To be sure, counsel's written notice was suffici-
ent to preserve Petitioner's right to an appeal, consequently,
Petitioner cannot possibly demonstrate any prejudice on the basis
of counsel decision not to give an oral notice of appeal.

Furthermore, Petitioner's claim that counsel was ineffective for failing to move for a dismissal for an insufficiency of the evidence is factually baseless. That is, the record reflects that counsel did, in fact, make such a motion at the conclusion of the evidence. (Trial Tr., dated September 8, 2003 at 221) Therefore, this claim also must be rejected as frivolous.

Similarly, to the extent that Petitioner's claim that counsel should have "filed a motion about a witness informant's credibility" actually is an argument that counsel failed to challenge the informant's credibility, that allegation is baseless. First, Petitioner fails to identify exactly what motion he believes his attorney should have filed in this regard. Second, the record reflects that counsel cross-examined the informant concerning numerous matters, including his criminal history and his motives for serving as an informant. (Trial Tr. at 137-56). Therefore, Petitioner cannot show any deficiency in counsel's handling of this witness.

Likewise, Petitioner cannot prevail on his claim that counsel violated his rights by reportedly having someone stand in for Petitioner during a probable cause hearing. First, Petitioner concedes that counsel gave him advance notice of the hearing, yet he does not claim that counsel actually precluded him from attending the proceeding. Therefore, it is quite unclear just what point Petitioner is attempting to make by this claim. Second,

Petitioner does not articulate what difference he believes his presence at that hearing would have made, or how that difference favorably would have changed the outcome of his case. Third, and perhaps most significantly, even if he skipped the hearing due to counsel's advice that he do so, Petitioner still cannot establish any prejudice on that basis since he was tried upon indictments which properly were issued by a grand jury. Therefore, the fact that a probable cause hearing was conducted in this case simply is irrelevant.

Petitioner also cannot establish any prejudice from counsel's decision to seek a continuance rather than a dismissal in response to the prosecutor's alleged disclosure that he was not yet ready for trial. As Respondent notes, Petitioner has failed to identify any rule which would have entitled him to a dismissal on the basis of that disclosure. In other words, in the absence of Petitioner establishing that counsel had a legal or ethical obligation to seek a dismissal on that basis –- as would arise when, for example, a delay would irreparably damage a defendant's ability to prepare his defense -- Petitioner simply cannot establish either a deficiency or prejudice under this claim. See generally North Carolina v. Labinski, 188 N.C. App. 120, 124 (2008) (noting that dismissal of charges, even for violation of statutory rights, "is a drastic remedy which should be granted sparingly.").

Although Petitioner's claim that trial counsel was ineffec-
tive for failing to raise the trial judge's supposed conflict of
interest may have some surface appeal, this claim also is base-
less.  According to Petitioner, trial counsel told him that the
trial judge and Ms. Thornton -- the lessor of the vehicle in
which Petitioner was caught trying to complete his drug deal --
were acquaintances, and that the judge had attempted to persuade
Thornton to "join several committees."  However, that purported
connection, without more, would not have required the judge's
recusal.

As Respondent properly observes, criminal defendants are
entitled to a fair trial by virtue of the Due Process Clause of
the Fourteenth Amendment.  In re Murchison, 349 U.S. 133 (1955).
This right includes not being tried by a judge who actually is
biased against the defendant, that is, a judge who "has a direct,
personal, substantial interest . . . in reaching a conclusion
against [the defendant] in his case."  Tumey v. Ohio, 273 U.S.
510, 532 (1927).  Thus, judicial recusal is required when a
judge's impartiality might reasonably be questioned.  However, "a
presiding judge need not recuse himself simply because he pos-
sesses some tangential relationship to the proceeding."  United
States v. Cherry, 330 F.3d 658, 665-66 (4th Cir. 2003).

Nor is there a requirement that a judge recuse herself where
there merely is an appearance of bias.  See, e.g., United States

19

v. Cole, 293 F.3d 153, 164 (4ᵗʰ Cir. 2002) (recusal not required
because government witness was son of judge's deceased godpa-
rents); United States v. DeTemple, 162 F.3d 279, 297-88 (4ᵗʰ Cir.
1988) (recusal not required in criminal case, even though judge
had previously represented alleged victims of the subject fraud);
In re Beard, 811 F.2d 818, 828 (4ᵗʰ Cir. 1987) (recusal not re-
quired based on statement made by bankruptcy judge in court that
he considered president of debtor corporation a "fine man"); and
United States v. Walton, 56 F.3d 551, 556 (4ᵗʰ Cir. 1995)
(judge's former partnership at firm during time when firm repre-
sented defendant four times was too attenuated to require recu-
sal).

Equally critically, Thornton was not present at the drug
deal.  A search of Thornton's apartment did not reveal any in-
criminating evidence.  Thornton was not called as a witness by
either party.  Consequently, Petitioner cannot demonstrate pre-
judice, let alone deficiency, for counsel's decision not to seek
the judge's recusal due to her mere acquaintanceship with Ms.
Thornton.

Petitioner's claim that counsel's opening statement should
not have mentioned Petitioner's involvement with the pornographic
film industry also appears to have some appeal; however, upon
careful examination, this claim likewise must be rejected.
Indeed, the Strickland case makes it clear that courts should be

reluctant to second-guess trial lawyers' deliberate tactics. Thus, "[c]laims of tactical error . . . must fail unless the attorney's conduct is actually incompetent and prejudicial." Pruett v. Thompson, 771 F. Supp. 1428, 1450 (E.D. Va. 1991). As the State Court of Appeals properly determined, the evidence in this case was more than adequate to establish Petitioner's guilt for the trafficking by possession charge. Therefore, this Court has no reason to conclude that the jury convicted Petitioner on the basis of any information concerning his involvement with pornography.

Furthermore, it was not an unreasonable trial strategy for defense counsel to mention that information, whether it was entirely true or not, during his opening statement in order to take away any advantage the prosecutor may have gained from springing the information on the jury through one or more of his witnesses. Therefore, the Court cannot conclude that counsel was incompetent in his handling of this matter.

Petitioner also cannot prevail on his claims that counsel was ineffective for having failed to object to the introduction of an allegedly "altered" audiotape of his drug transaction, for which introduction he also allegedly did not receive proper notice under State law. Petitioner, once again, grounds his arguments in little more than abject speculation. Petitioner claims that the tape was "altered with [Agent Hetzel's] voice on the

tape," and that the agent's "daily police report" establishes
that he could not have observed Petitioner's drug transaction
because he was somewhere else at the time that transaction took
place. However, Petitioner does not set forth a single fact to
suggest that he actually has seen such a report and is aware of
its contents. Clearly, then, this fanciful allegation cannot
entitle Petitioner to any relief. See generally Adams v. Rice,
40 F.3d 72, 74 (4th Cir. 1994) (affirming dismissal of factually
frivolous, nonsensical claims).

In any case, as has been noted, the State's presentation
included testimony from certain law enforcement officers other
than Agent Hetzel and from the informant, Bernard Falls. To-
gether, those witnesses established that the officers listened in
as Petitioner engaged in pre-sale negotiations for two kilograms
of cocaine with Falls; that on the occasion that the sale was to
take place, officers monitored the unconsummated transaction as
it occurred; and that in response to Falls' request, Petitioner
allowed him to look at the two kilograms of cocaine in the back
of his vehicle, which allowed Falls to verify for the officers
that the cocaine was there before they moved in to arrest
Petitioner. (Trial Tr. 5-33, 61-82 and 98-137). In addition,
Falls' testimony established that Petitioner had supplied him
with one-quarter to one-half kilogram-sized packages of cocaine
on ten to twenty prior occasions over a several year period; that

he and Petition-er previously had completed transactions at the same YMCA location as where the instant transaction was arranged to take place; that Falls previously had seen Petitioner driving the same vehicle as the one in which the instant transaction was to take place; and that a few years earlier, Falls was caught by a Texas State Trooper while attempting to transport over $120,000 to one of Petitioner's contacts in Texas. (Trial Tr. at 98-137). Therefore, in the absence of a successful challenge to this other evidence, Petitioner cannot possibly establish any prejudice on the basis of counsel's handling of the audio tape's admission.

Furthermore, Petitioner cannot prevail on his contention that counsel should have objected to the admission of the audio-tape due to the prosecutor's alleged failure timely to give him notice of his plan to introduce that tape. Indeed, the provision upon which Petitioner bases this claim, N.C.G.S. 15A-975(b), merely relates to the timing of the filing of a motion to suppress; it does not mandate that such a motion must be made. Nevertheless, even if the State's notice was untimely, Petitioner cannot establish any prejudice by counsel's failure to seek suppression inasmuch as the portion of the tape in question -- which merely established that Agent Hetzel was present in the area and observed Petitioner show Falls the drugs -- provided evidence which was cumulative to Falls' testimony regarding that matter.

In sum, Petitioner has failed to demonstrate deficient per-

23

formance and/or prejudicial impact in connection with any of his cognizable claims against trial counsel. Therefore, these allegations must be rejected in their entirety.

### 3. Petitioner's claim of prosecutorial misconduct

By his second claim, Petitioner alleges that he was subjected to prosecutorial misconduct because the prosecutor knowingly used illegally obtained and altered evidence against him. However, even if Petitioner were entitled to raise a substantive Fourth Amendment challenge in this <u>habeas</u> proceeding, the Court already has concluded that the evidence legally was secured by virtue of certain exceptions to the Fourth Amendment's arrest and search warrant requirements. Moreover, the Court already has concluded that Petitioner failed to establish that the evidence, in fact, was altered. Therefore, these allegations are baseless.

Petitioner also claims that the prosecutor erroneously used separate identical indictments to pursue successive prosecutions against him. However, Petitioner merely was charged with two separate crimes, <u>i.e.</u>, trafficking in cocaine by possession and trafficking in cocaine by transportation, on the basis of a single underlying factual scenario. Because each of those offenses requires proof of an element which the other does not, Petitioner cannot establish any constitutional violation by this claim. <u>See</u> <u>United States v. Dixon</u>, 509 U.S. 688, 704 (1993)

(discussing and re-affirming "same elements" test from <u>Block-buster</u>).  Moreover, even if Petitioner properly could not have been prosecuted for both offenses, his conviction and sentence for the trafficking by transportation offense were vacated; therefore, he cannot establish prejudice in any event.

Additionally, Petitioner's remaining allegations, including his claims that the prosecutor suppressed or withheld evidence, elicited perjured testimony, and conspired to convict him, are similar to some of his allegations against trial counsel in that he has failed to articulate any factual support for these assertions.  Thus, like those other conclusory allegations, the Court finds these contentions baseless.  <u>Rice</u>, <u>supra</u>, 40 F.3d at 74.

By his final claim, Petitioner alleges that he was subjected to a conflict of interest by virtue of the trial judge's bias against him.  However, the Court already has determined that Petitioner has failed to establish the existence of any such disqualifying bias or conflict on the trial judge's behalf.  Therefore, this claim also must be flatly rejected.

### III.  <u>CONCLUSION</u>

The Court carefully has reviewed each of Petitioner's numerous allegations and determined that several were barred by his unexcused procedural default of them; and that the State Court's adjudication of the others was not contrary to, nor involved an

unreasonable application of, clearly established federal law. Consequently, because Petitioner is not entitled to relief on any of his claims his Petition must be <u>denied</u> and <u>dismissed</u>.

**IV. <u>ORDER</u>**

**IT IS, THEREFORE, ORDERED that:**

1. Petitioner's Motion to Obtain Ruling is **DISMISSED** as moot;

2. Respondent's Motion for Summary Judgment is **GRANTED;** and

3. Petitioner's Petition for a Writ of <u>Habeas Corpus</u> under 28 U.S.C. §2254 is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: November 23, 2009

Graham C. Mullen
United States District Judge